UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        *Plaintiff,*

        CRIMINAL NO. 22-mj-30476

v.

        Hon.

TIMOTHY ALLEN TEAGAN,

        *Defendant.*

_____/

## GOVERNMENT'S WRITTEN PROFFER IN SUPPORT OF ITS REQUEST FOR DETENTION PENDING TRIAL

TIMOTHY ALLEN TEAGAN is a danger to the community and a flight risk, and he should be detained pending trial. In addition to the information contained in the Pretrial Services Report of the U.S. Pretrial Services Officer, and the Criminal Complaint, the government proffers the following supplemental information pursuant to 18 U.S.C. § 3142 (f):

### CHARGES AND STATUTORY MAXIMUMS

On October 29, 2022, Defendant was charged in a sealed criminal complaint with a violation of 18 U.S.C. § 922(g)(3), drug user in possession of firearms and ammunition, a felony punishable by a term of imprisonment of up to 15 years in prison. 18 U.S.C. § 924(a)(8). Defendant is also charged with a violation 18 U.S.C.

1

§ 922(a)(6), false statement made in connection with the acquisition of a firearm, a felony punishable by a term of imprisonment of up to 10 years in prison. 18 U.S.C. § 924(a)(2).

## LEGAL STANDARD

Defendant is a danger to the community and a flight risk. The Bail Reform Act allows the government to ask the Court to hold a detention hearing in several circumstances, including in cases that involve the possession of a firearm (18 U.S.C. § 3142(f)(1)(E)), or where there is "a serious risk such person will flee". 18 U.S.C. § 3142(f)(2)(A). The Act requires the court to detain a defendant whenever the defendant is either a risk of nonappearance or a danger to the community. *See id.*; *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985).

The government must establish the (1) "risk of flight by a preponderance of the evidence" or (2) "dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 Fed.Appx. 76, 77 (6th Cir. 2004). See also *Hazime*, 762 F.2d at 37 (The government need only demonstrate the risk of nonappearance by a preponderance of the evidence).

The legislative history of the Bail Reform Act "specifies that the concept of a defendant's dangerousness as used in the Act is to be given a broader construction than merely danger of harm involving physical violence. […] The Congress was

apparently concerned with the safety not only of a particular identifiable individual, perhaps a victim or witness, but also of the community as a whole." *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988), quoting *United States v. Delker*, 757 F.2d 1390,1393 (3rd Cir. 1985) (internal quotations and citations omitted).

In assessing danger to the community, the Sith Circuit has held that statements of "violent intent" towards a girlfriend may be considered as evidence of dangerousness even though the statements do not relate to the charged offenses. *United States v. Stone*, 608 F. 3d 939, 953 (6th Cir. 2010), citing *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir.1990) ("[W]e reject Quartermaine's suggestion that his acts of 'domestic' violence do not support a finding of dangerousness to the community. A willingness to strike loved ones offers probative evidence of a tendency to violence and dangerousness toward others").

## NATURE AND CIRCUMSTANCES OF THE CHARGED OFFENSES

In the early morning hours of October 25, 2022, Plymouth Police Department (PPD) arrested Defendant for domestic violence, and not for the first time. On this occasion, police officers were called to XXXX Cherry Street, Plymouth, Michigan (the Cherry Street residence) where they arrived to find Defendant's father, Johnathan Teagan, Jr. ("Johnathan Teagan, Jr.") covered in blood. He had been bitten on the forehead and repeatedly punched by Defendant.

PPD officers spoke with Johnathan Teagan, Jr. and Defendant, and two other witnesses at the scene before arresting Defendant for domestic violence. The severity of the injuries sustained by the victim were observed, documented, and photographed by the police. (*Sealed Exhibit 1: Photos of Defendant and Johnathan Teagan, Jr. from 10/25/2022*). After receiving medical attention from EMS, Defendant was arrested and charged with domestic violence.

On October 25, 2022, Defendant's brother, Christopher Teagan told PPD officers there were at least three guns located within in the Cherry Street residence.

On October 25, 2022, Johnathan Teagan, Jr. spoke to an agent of the Federal Bureau of Investigation ("FBI"). Johnathan Teagan, Jr., who is prohibited from possessing firearms, told the agent that Defendant legally owns an AR-15 rifle and at least one Glock handgun, that the guns in the house stored in a safe in Defendant's room, and that Christopher Teagan and Defendant each have a key to the safe. Johnathan Teagan, Jr. stated he did not have access, and that in the past, he has repeatedly asked Defendant to remove the firearms from the premises, but Defendant has refused to do so.

Johnathan Teagan, Jr. told the FBI agent that Defendant had been living at the Cherry Street residence, but more recently has been staying at hotels with Alex Powers. Defendant frequently visited the Cherry Street residence and stored some

4

of his possessions in a bedroom of the residence ("Defendant's room"). With

Johnathan Teagan, Jr.'s consent, officers walked through the Cherry Street address.

While walking through Defendant's room, officers observed in plain view a

package containing what appeared to be marijuana, drug paraphernalia (to include

a large water pipe frequently used to smoke marijuana and other substances

("bong"), a bucket containing a variety of smaller bongs, numerous vape pen

cartridges consistent with THC, and grinders frequently used to grind whole leaf

marijuana), metal/brass knuckles, several rounds of AR-15 style ammunition, a

cellular phone, a gun safe, a Boogaloo movement flag[1], gas masks, and a plate

---

[1]   Boogaloo ideology is an anti-government or anti-authority concept advocating the violent
overthrow of government. The term "boogaloo," as it is used today, emerged online in early
2013 and has increasingly been co-opted by militia violent extremists to refer to an impending
politically-motivated civil war or uprising against the government following perceived incursions
on constitutional rights—including the Second Amendment—or other actions perceived as
government overreach.

In the current atmosphere created by the pandemic, militia violent extremists have made calls
for the "boogaloo," "big igloo," or "big luau," and used imagery such as igloos or Hawaiian
shirts to promote their interest or anticipation of an impending war. Boogaloo ideology is linked
with the concept of accelerationism, which boogaloo adherents and some other extremists use to
justify engaging in violence to induce their desired conflict based on the perception that
participating in elections or other civic processes is ineffective.

Some boogaloo adherents, including militia violent extremists, acquire and wear ballistic
armor and carry firearms, have a desire to build unregistered firearms, and possess military-grade
optical sights and laser sighting devices. They often use this equipment in carrying out their
activities and endorse and promote its use online.

Boogaloo ideology and related violent behavior is not directed at any specific entity but at all
government agencies, including local, state, and federal agencies and law enforcement.
Boogaloo-inspired attacks and plots are increasingly frequent and the online presence of
boogaloo content and communications, including the creation of social media groups and
forums, has increased significantly over the past several months.

carrier. A Narcan kit was also observed. (Narcan is used for the treatment of a known or suspected opioid overdose emergency). (*Sealed Exhibit 2: Photos of Defendant's Room on 10/25/2022*). Johnathan Teagan, Jr. told officers that Defendant "loved" marijuana, and he was the sole marijuana user in the home.

On October 26, 2022, at approximately 1:55 p.m., Defendant was released on bond with conditions, and the charges are currently pending in the 35th District Court, Plymouth, Michigan. Defendant was bonded to XXX Ann Street, Plymouth (his grandparents' residence), and he was ordered to "immediately notify this court, in writing, of any change or address or telephone number." He was prohibited from having contact with, and from threatening, assaulting, harassing, or bothering Johnathan Teagan, Jr. Defendant was ordered to "surrender all firearms to law enforcement", and he was prohibited from "possessing any firearms and/or weapons of any kind." He was also ordered not to "possess, purchase, or consume any controlled substances, alcohol or intoxicants, including recreational and medical marijuana." (*Exhibit 3: Bond Conditions on 10/26/2022*).

On October 27, 2022, FBI executed a federal search warrant at the Cherry

---

Recent publicly reported boogaloo-inspired acts of violence include a 2019 attack in which a shooter opened fire on the Earle Cabell Federal Building and Courthouse in Dallas, Texas. In May and June 2020, two men were indicted in the Northern District of California for shooting to death one Protective Security Officer and wounding another officer at the federal courthouse in Oakland, California.

Street residence. Agents found an AR-15 rifle (a Diamondback Arms, Inc. DB-15 .556 caliber semi-automatic rifle) from the bed, dozens of rounds of both rifle and 9 mm ammunition, multiple AR and 9mm magazines, an ACOG rifle sight and rifle stock fore-grip, multiple containers of what appears to be marijuana[2], a large bong, dozens of smaller bongs, and other drug paraphernalia, and a grinder frequently used to grind whole leaf marijuana. Agents observed among Defendant's possessions a plate carrier vest, Level IV body armor, Boogaloo movement flags and patches, and gas masks. Conspicuously missing from the home were the Defendant's Glock 34, 9 millimeter handgun and the numerous vape pen cartridges (that the police had seen in the room two days before). (*Sealed Exhibit 4: Photos of Search on 10/27/2022*).

As agents arrived at the Cherry Street residence at approximately 2:20 p.m. to execute the search warrant, agents learned Defendant was seeking medical attention at a local hospital. Christopher Teagan arrived at the Cherry Street residence at approximately 3:30 p.m. He advised agents that Defendant had his cellular telephone in his possession, and that Christopher Teagan had delivered a "*ton of weed*" to his brother, along with some clothes. Many days later, after agents

---

[2] One of the items was field-tested, and it tested "positive" for marijuana.

7

searched Defendant's cellular phone, they observed that at 3:37 p.m., there was a 32 second call between Defendant and Christopher Teagan, and at 3:51 p.m., Defendant texted his girlfriend and told her "the FBI is raiding the house right now." At 4:09 p.m., in a group text, Christopher Teagan asked Defendant, "Should I give em the pistol." Defendant responded, "Only if they ask" and added, "More or less demand." (*Sealed Exhibit 5: Texts*, pp. 8-9, 11). After initially stating he did not know where his brother's handgun was located, Christopher Teagan consented to the search of his vehicle, and agents seized Defendant's Glock 34, 9 millimeter handgun from Christopher Teagan's trunk.

Defendant is a long-time marijuana user. Christopher Teagan told agents Defendant has been smoking marijuana since he was 7 years old[3], and that he smokes 4-5 times per day. Johnathan Teagan, Jr. told FBI that Defendant can't handle his liquor, but that marijuana doesn't seem to affect him. Johnathan Teagan, Jr. stated he was unable to tell when Defendant was high, because he is always high. On October 27, 2022, Defendant told FBI that he is a marijuana user, that he has been trying to cut back. Defendant acknowledged that his brother Christopher Teagan brought marijuana to him the day prior (October 26, 2022) but stated had

---

[3] During the interview, C.T. later suggested Defendant may have been 10 years old, or between 7 and 10 years of age when he began smoking marijuana.

not yet used it. He then changed his answer, stating that his brother brought the marijuana for someone else. In yet another statement, Defendant stated that he cannot recall the last time he used marijuana, but he stated he hasn't smoked it in years.

Evidence of Defendant's longtime use of marijuana includes his April 4, 2021, statements made during a Boogaloo-led protest. This video was publicly available on the News2Share (www.news2share.com) website, showcasing the Boogaloo members protesting outside the Ann Arbor Justice Center in Ann Arbor, Michigan. Defendant is pictured holding an AR-15 style rifle, with a partially clear sided magazine inserted into the rifle, allowing the viewer to see ammunition present in the magazine. While holding the loaded firearm, Defendant made the following declaration admitting his use of "*weed*": "*I love this city. I smoke plenty of weed in this city, believe me. Been to hash bashes before*."

On July 17, 2022, Defendant submitted an ATF Form 4473 for the purchase of a Glock 34, 9 mm handgun. When signing the form, he certified that the information provided was accurate under penalty of prosecution. Defendant denied being a drug user, answering "no" to question 21. E, of Section B, on the form, which states: "*Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? Warning:*

9

*The use or possession of marijuana remains unlawful under Federal law*

*regardless of whether it has been legalized or decriminalized for medicinal or*

*recreational purposes in the state where you reside*." When completing the

purchase of the Glock 34 on July 20, 2022, Defendant re-certified the accuracy of

the information he provided in Section B of the form, affirming that the

information was "still true, correct, and complete."

On October 29, 2022, a sealed complaint and arrest warrant were issued

charging Defendant with being a drug user in possession of firearms and

ammunition, and for making a false statement in connection with the acquisition of

a firearm. Defendant's whereabouts were unknown, but he was believed to be

living in the area, hotel hopping. Agents later learned Defendant had been staying

at the Comfort Inn, Livonia, Michigan, with Alex Powers, in a room registered to

Alex Powers. Defendant was not named as a guest in the room. The two men

checked out of the hotel on October 30, 2022, and Defendant's whereabouts that

night are unknown. On October 31, 2022, Defendant and Alex Powers checked

into the Baymont Wyndham hotel in Canton, Michigan, in a room registered to

Alex Powers. Defendant was not named as a guest in the room.  Defendant was

arrested on November 1, 2022, outside a restaurant in Plymouth, Michigan.

Defendant had been driving Christopher Teagan's car. After obtaining consent to

10

search the vehicle, agents found a fixed blade knife and sheath among Defendant's possessions. (*Sealed Exhibit 6: Photo of fixed blade knife from 11/1/2022*).

During the consent search of Defendant's hotel room, Alex Powers identified Defendant's bag. Inside the bag was another bag labeled with Defendant's name and containing personal effects from his domestic violence arrest, packages of suspected marijuana[4], a marijuana grinder, and a Hawaiian shirt. (*Sealed Exhibit 7: Photo of Marijuana from 11/1/2022*). In addition, Defendant's bond papers (from his 10/25/2022 arrest) and the federal search warrant for the Cherry Street residence, were found on a table in the room.

Defendant waived his *Miranda* warnings, and he was interviewed by the FBI. Defendant admitted to having his Glock firearm in the hotel room on October 27, 2022. Defendant admitted his brother brought him weed when he was released from jail. He admitted that he knew that his bond address (for the domestic violence charge) was his grandfather's Ann Street address, but he did not believe that the court cared if he was hotel hopping. Defendant stated he planned to continue to hotel hop until one of his friends rents a house and he can become their roommate.

---

[4] Agents found 4 packages containing suspected marijuana, and at least one had been opened. The opened packed was field tested, and it tested "positive" for marijuana.

## DEFENDANT'S HISTORY AND CHARACTERISTICS

### A. Criminal History

Defendant is 23 years old and he is well known to the police. His earlier encounters with the police began when he was a juvenile, and he has had at least 6 encounters with the police in the last 8 years. As detailed below, Defendant's prior contacts with law enforcement show a pattern of violent and dangerous behavior.

Defendant's first reported encounter with police occurred on June 13, 2014, when he was 16 years old for possession of drug paraphernalia and alcohol.

A few months later, on September 4, 2014, Defendant was charged with assault and battery. The offense occurred at his grandparents' home on Ann Street in Plymouth. In that case, police observed Defendant's father, Johnathan Teagan, Jr. had fresh bruising around his left eye and had blood dripping from his nose. Johnathan Teagan, Jr. reported that his two sons, Christopher Teagan (aged 15) and Defendant (aged 16), got into a verbal argument which became physical. According to Johnathan Teagan, Jr., Christopher Teagan leant his phone to Defendant, who refused to return it, resulting in a fight. Christopher Teagan told police that Defendant head butted him and stuck his thumb into Christopher Teagan's eye and attempted to "gouge" it out. When Johnathan Teagan, Jr. tried to separate Defendant from Christopher Teagan, Defendant intentionally punched his father in the face

several times with a closed fist. After successfully separating his sons, Johnathan Teagan, Jr. took Christopher Teagan outside into the front yard. Defendant came to the front door with a sword in his hands and refused to let them back inside. Johnathan Teagan, Jr. called police who arrived to investigate. Neighbors verified the events that occurred outside the Ann Street home. A neighbor stated that as he was walking to his garage, he heard loud yelling coming from the area of their residence, and saw Johnathan Teagan, Jr. and Christopher Teagan standing in the street yelling at the Defendant, who was in the front doorway of their house with a long staff-like object and that he was yelling back at his father and brother. Defendant admitted to fighting and having a sword. (*Sealed Exhibit 4: Photos of Sword*).

On April 15, 2017, when Defendant was 19 years old, he was charged with possession and use of marijuana. He pleaded guilty to the reduced charge of possession of drug paraphernalia on June 26, 2017.

Defendant was arrested a few days later, on June 30, 2017, for assault and battery, at the Cherry Street residence. Like the last time, he was charged with assaulting his father and brother. Police were dispatched for a report of domestic violence assault and battery in progress. Police arrived and saw Christopher Teagan standing outside the home on the phone with police dispatch. Through the widow,

police saw Defendant on top of his father, who was on the couch. Police entered the home and ordered Defendant to exit the house. Christopher Teagan advised police that, as he was backing out of the driveway, he backed into a vehicle that belonged to Defendant's friend. Defendant charged Christopher Teagan as he was exiting his car, and a physical altercation occurred. Defendant bit Johnathan Teagan, Jr. on the forearm when he tried to separate his sons. A short while later, after Defendant had calmed down, and all parties entered the Cherry Street residence, Defendant retrieved an air soft shotgun and began shooting at Christopher Teagan and Johnathan Teagan, Jr.

Defendant also obtained a sword—which was 27 inches in length with a 17.5 inch double edged blade—from his bedroom. Defendant chased Christopher and Johnathan Teagan, Jr. around the house with the store, and stabbed the refrigerator with it—the police officer saw three puncture marks approximately 4 inches long in the metal side of the refrigerator.

Christopher Teagan reported he grabbed a baseball bat to defend himself. When Christopher Teagan entered the living room, he saw the Defendant holding the blade of the sword to J.T's neck, and heard him say "Don't you test me." Defendant was holding the handle of the sword with both hands. Upon observing Christopher Teagan, Defendant chased him back into his room, but did not follow

him inside. Christopher Teagan called police and escaped the home through the side door. When interviewed, Defendant admitted to having the sword in his hands, but denied threatening anyone with it. He admitted that he struck the refrigerator with the sword a couple of times, and he also admitted to shooting the airsoft gun at his father and brother. Defendant pleaded guilty to the charges, but received a deferred disposition and, on July 30, 2018, all charges were dismissed.

On March 12, 2022, police were called to his grandfather's neighbor's house, where J.B. and his wife M.B. live. J.B. an M.B. told police that Defendant was at their home "hanging out." After an argument, J.B. reported that Defendant became angry, slammed his beer down, and then punched J.B. on the head three times with a closed fist. M.B. reported that Defendant called her a "cunt" and kicked her in the face. Defendant also tried to dig his finger into J.B.'s eye socket. M.B. told police that Defendant threatened that if they called the police he would come back to shoot up their house with his AR-15 rifle.

On October 25, 2022, Defendant was charged with domestic violence again. In this most recent incident, witnesses report Defendant was at the Cherry Street residence—where his father and brother reside, and where Defendant stores many of his possessions. Defendant was drunk when he got into a van in the driveway and Johnathan Teagan, Jr. became concerned that Defendant was going to drive drunk.

When Johnathan Teagan, Jr. attempted to stop Defendant, a fight ensued. Defendant repeatedly punched his father in the face, and bit him in the head. Defendant's vicious assault caused bleeding and visible bruising to Johnathan Teagan, Jr.'s eyes. Officers also observed (and photographed) Defendant's swollen fists.

### B. Defendant's Substance Abuse History

Defendant is a long-time marijuana user. Christopher Teagan advised the FBI that his brother has been using marijuana since he was between 7 and 10 years old. Defendant told Pretrial Services that he began using marijuana and alcohol when he was 14 years old. He claimed he was trying to cut back on his marijuana usage and added that he has not used the substance in over a month. These statements contradict what Defendant told FBI during his November 1, 2022 interview.

Defendant's statements are self-serving and not reliable. The evidence shows that Defendant is a regular and prolific user of marijuana. Evidence seized from Defendant's room, including marijuana, numerous bongs and drug paraphernalia, Defendant's acknowledgement that his brother brought him weed after he was released from jail on the domestic violence charge (Christopher Teagan brought him "*a ton of weed*"), marijuana found in Defendant's hotel room (including at least one open bag), and Defendant's many statements on text messages all belie this assertion. A few examples of Defendant's recent texts include: On October 7, 2022,

16

Defendant texted, "I think I smoked too much today [emogis] and fuckinggg backed rn". On October 15, 2022, Defendant texted, "Yee we stopped in to see my brother, smoked a good amount so I'm just vibin [emogi]". On October 17, 2022, Defendant texted, "I'm parked outside if ya wanna smoke." (*Sealed Exhibit 7: Texts, pp.2-5, 7-8*).

### C. Education and Employment

There is no information about Defendant's education. According to the Pretrial Services Report, Defendant has been employed as a pizza delivery driver at Dominos for approximately 5 years. Text messages suggest Defendant used marijuana while he was working. Pizza delivery is not a specialized skill, nor the type of employment that would provide a reasonable incentive not to flee, and to remain in the district.

### D. Defendant's Community Ties and Residence

According to the Pretrial Services Report, he lived with his grandparents at the Ann Street address until approximately 4 years ago. From approximately 2018 through approximately September 2022, Defendant lived with his father at the Cherry Street residence. Defendant has been living in hotels for the last six weeks. Defendant has been arrested for domestic violence at both the Ann Street and Cherry Street residences, and Defendant is alleged to have assaulted and threatened his

grandparents' neighbors on Ann Street.

Defendant's residential instability poses a danger to the community, and a flight risk.

**E. Defendant's Failure to Comply with Court Ordered Bond Conditions**

Defendant has knowingly failed to comply with the bond conditions ordered by the 35th District Court. As explained below, Defendant possessed a firearm, a fixed blade knife, and marijuana, all in violation of the court ordered prohibition on the possession of drugs, guns, and weapons. Defendant also failed to live at the bond address or to update the court when he moved from one address to another.

During his October 26, 2022, state court bond hearing, the Court expressed concerns about Defendant's violent behavior and his possession of firearms. The Judge told the Defendant that: "You are not to possess any weapons or firearms of any kind while this is pending," and "You're not to possess, purchase or consume any controlled substances, alcohol, or intoxicants, including marijuana." (*Exhibit 9: Bond Hearing Transcript, 10/26/2022, at p. 7*).

Initially, the Judge believed the police impounded Defendant's firearms, and that Defendant no longer had access to them. After learning the firearms had not been impounded, the Judge ordered the Defendant to surrender them, but changed his order when Defendant told the court, "All my weapons are locked in a gun safe

that my little brother has." (*Id.* at p. 6). After confirming Defendant's weapons were "locked in the safe there where he doesn't have access to them", the Judge set Defendant's bond with conditions. (*Id.* at p. 7). Defendant never told the Court he had a key to the safe, and that he, in fact, did have access to the firearms.

Instead, Defendant regained possession of his Glock 34, 9 millimeter handgun shortly after he was released, and the firearm was stored in Defendant's hotel room. The next day, on October 27, 2022, at 11:41 a.m., Defendant was at the Comfort Inn hotel in Livonia. He texted friends at 11:41 a.m. that he was concerned about getting out (of the hotel) before "they get here", an apparent reference to the FBI. The other participant texted Defendant at 11:48 a.m., stating, "but if you need a place to lay low for a bit he said you can possibly stay with them", referring to two individuals. At 11:54 a.m., Defendant texted that if he didn't have "a piece on me I wouldn't be worried." (*Sealed Exhibit 5: Texts, pp. 12A, 13*). From this text, it appears Defendant is worried because he was in possession of a firearm, the very firearm he told the Court he did not have access to. In addition, during his November 1, 2022, interview with FBI, Defendant was shown the text referencing "a piece", and he admitted that he was talking about his Glock 34, and that the firearm was in the hotel room while he was there.

When he was arrested on November 1, 2022, Defendant had in his possession

a fixed blade knife, another bond violation. (*Sealed Exhibit 6: Photo of fixed blade knife from 11/1/2022*). Agents also found four packages of marijuana (including at least one that was opened), and a marijuana grinder, in Defendant's bag in his hotel room. (*Sealed Exhibit 7: Photos of Marijuana from 11/1/2022*). On October 26, 2022, at 6:43 p.m., Defendant received a message in a group text. The sender stated, "Did you guys wanna smoke?" Defendant replied at 6:47 p.m., "Yee boi", and the sender texted, "Alright I'll head that way". (*Sealed Exhibit 5: Texts, p. 8*).

Defendant's possession of marijuana hours after his release on bond, combined with text messages showing his intent to use marijuana are violations of his bond conditions.

The Defendant was bonded to his grandfather's Ann Street residence and ordered to immediately notify the court—in writing—of any address changes. (*Exhibit 3: Bond Conditions on 10/26/2022*). Defendant did not live at the bond address or alert the court to his change of address.[5] Instead, he lived in hotels and engaged in behavior that shows he was attempting to avoid apprehension by the FBI. He told the FBI that he did not believe that the court cared if he was hotel hopping instead of living at his grandparent's home.

---

[5] PPD Lieutenant Grabowski advised that as of November 7, 2022, the court's register of actions does not contain any change of address notification by the Defendant.

On October 27, 2022, at 2:47 p.m., Defendant texted about the FBI, "Well their probably doing laps to find me cause I don't have an actual address I hotel jump lately". At 4:19 p.m. while he was still in the hospital, Defendant texted, "The FED involvement is cause they're after me cause of my movement." When the other participant asked, "You're not getting arrested again are you", Defendant replied, "I'll be 100 with you hun, I can't let the Feds arrest me" and "I have some of my men meeting me soon." (*Sealed Exhibit 5: Texts, pp. 12, 14*).

Defendant knowingly failed to comply with several important terms and conditions of his pretrial release almost immediately upon release. Defendant's violations are serious and his inability to follow court orders present the Defendant as both a danger to the community and a flight risk.

**F. Other Evidence of Defendant's Dangerousness**

A review of the Defendant's cellphone has not yet been completed, but a review of some of his text messages highlights the danger Defendant poses to the community.

For instance, on April 5, 2022, Defendant chatted with a user who asked, "You ever just make it abundantly clear to the female in your life if she talks to the feds in any capacity that you could literally turn her into an unidentified skeleton in the woods with no problem?" Defendant responds, "My entire bloodline knows this",

and adds, "I drew a sword on my ol man for calling the cops before." Later in the text, Defendant stated, "Me n him have had 2 sword fights". (*Sealed Exhibit 5: Texts, p. 1*).

In addition to drawing and using his sword against his father and brother in the past, Defendant physically assaulted his grandfather's neighbors, and threatened that if they called the police, he would come back to shoot up their house with his AR-15 rifle. This neighbor told FBI that Defendant has become more extreme in his comments in the last two years, and that he carries his AR-15 rifle with him in his trunk, and sleeps with it at night. He also carries his rifle across state lines into prohibited states. Defendant told J.B. that if the FBI ever comes for him he will die in the name of freedom by fighting back.

Finally, Defendant is a self-proclaimed member and supporter of the Boogaloo movement. His affiliation is relevant to whether Defendant is willing to submit himself to the authority of this court and abide by its orders. Defendant's support for this group's ideology magnifies the danger he poses to the community, and his association affords him resources that he can leverage to aid him should he chose to flee.

Boogaloo members often communicate with each other in person, or electronically using computers and/or cellular devices, on internet platforms, and

on messaging and/or encrypted applications. Defendant has been interviewed and quoted publicly in news articles and videos promoting the Boogaloo movement. He has posted photos of his in-person attendance at Boogaloo gatherings, and his possession and use of firearms, on Twitter and Facebook.

The Boogaloo movement views the State and Federal Government as a potential hostile enemy. Defendant has communicated with other Boogaloo members looking for places to hide from law enforcement, and in public interviews expressed his concern that [Booglaoo members] may retaliate against law enforcement for arresting him.

On October 28, 2022, Defendant was interviewed on Twitter by a News2Share journalist and emphasized that he did not intend to resist arrest "at this point in time." He stated that he was "trying to make sure everything stays peaceful", but he was concerned about "retaliation," presumably by members of the Boogaloo movement. The audio interview was attached to the following tweet:

Ford Fischer ✔ @FordFischer · Oct 28
I asked Tim Teagan if he intends to physically resist if/when the FBI comes to arrest him (only a search warrant executed so far.)

"At this point in time, no," he says.

"I am worried for if anything were to happen to me, if there were to be retaliation. That is a fear of mine."

## ARGUMENT

Pretrial Services concurs in the government's assessment that Defendant is a danger to the community and a flight risk. The government disagrees with Pretrial Services' recommendation of bond. An analysis of the factors under 18 U.S.C. §3142 weigh heavily against release.

His prolific drug and alcohol abuse, combined with his possession of firearms, and his history of violence, volatility, and aggression, against both his family members and others present a danger to his friends, family, and the community at large. In addition to his fists, prior complaints include allegations of biting, kicking, attempted eye-gouging, as well as the use of a sword and an airsoft gun to assault his family members and friends. He has also alleged to have threatened the use of force against those who would call the police to report his crimes.

Although arrests have not led to many criminal convictions, the allegations are similar in nature and show a pattern of deeply disturbing behavior that is probative of dangerousness. *See Delker*, 757 F.2d at 1400 (The Bail Reform Act "specifically provides for consideration of prior arrests in the release decision", and the legislative history reflects "Congress' belief that there is a 'significant correlation' between prior criminal history and pretrial rearrest."). Here, there are photographs, police observations, and admissions from the Defendant of his

24

wrongdoing, corroborating the police reports filed against him.

In the Pretrial Services report, Defendant suggests that he sustained "a head injury" during his attack on his father, and that his "head injury" caused him to have memory problems. Two days after the assault, on October 27, 2022, Defendant sought medical attention at St. Mary's Hospital. He was scheduled to receive some medical tests to determine whether there was evidence of a head injury, and Defendant told Pretrial Services in their November 7, 2022 report, that he is awaiting the results of a CT scan. When he learned that the FBI was executing a search warrant at the Cherry Street residence sometime between 3:30 p.m. and 4:00 p.m. on October 27, 2022, Defendant voluntarily checked himself out of the hospital, apparently before testing was completed or any diagnosis was made.

If the Defendant is, in fact, suffering from a head injury, then memory loss and confusion will significantly impact his ability to comply with bond conditions. The government is unaware of any follow-up treatment or testing that may have occurred after Defendant left St. Mary's Hospital, but such evidence is relevant to determine whether Defendant is a suitable candidate for bond.

On the other hand, if Defendant is seeking to gain a tactical advantage in court by exaggerating or feigning memory loss and/or confusion to undermine the reliability of his statements to the FBI and evidence of his knowing violation of state

bond conditions, then the Defendant's efforts to mislead the court show that he is not a suitable candidate for bond.

The government opposes releasing the Defendant into the third-party custody of his family. Defendant assaulted his father in the most recent case when Johnathan Teagan, Jr. tried to stop his son from driving while intoxicated. The government opposes putting the Defendant's grandparents or mother in the position of policing Defendant's behavior. Defendant's family members have been victims of his abuse, and like many domestic violence victims, they have failed to follow through on criminal charges and shielded Defendant from facing the consequences of his actions.

## CONCLUSION

Based on the above proffered facts and the information contained in the Pretrial Services Report, the United States believes that there is no condition or combination of conditions that will reasonably assure the appearance of Defendant as required and the safety of any other person and the community.   It is therefore respectfully requested that the Court order the detention of Defendant pending trial pursuant to the Bail Reform Act.

Respectfully submitted,

DAWN N. ISON
United States Attorney

*s/Saima S. Mohsin*
SAIMA S. MOHSIN
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9163
Saima.Mohsin@usdoj.gov

# EXHIBITS

Sealed Exhibit 1: Photos of Defendant and Johnathan Teagan, Jr. from 10/25/2022
Sealed Exhibit 2: Photos of Defendant's Room on 10/25/2022
Sealed Exhibit 3: Bond Conditions on 10/26/2022
Sealed Exhibit 4: Photos of Search on 10/27/2022
Sealed Exhibit 5: Texts
Sealed Exhibit 6: Photo of fixed blade knife from 11/1/2022
Sealed Exhibit 7: Photo of Marijuana from 11/1/2022
Sealed Exhibit 8: Photos of Sword
Exhibit 9: Bond Hearing Transcript, 10/26/2022